**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLARK DEMETRO, FRANKIE QUICK, EDDIE DEMETRO, and JOSH DEMETRO, | |
| Plaintiffs, | Civil Action No.: 11-4377 (JLL) |
| v. | **OPINION** |
| POLICE DEPARTMENT, CITY OF CHERRY HILL, STATE OF NEW JERSEY; POLICE DEPARTMENT, CITY OF LINDEN, STATE OF NEW JERSEY; POLICE DEPARTMENT, CITY OF ELIZABETH, STATE OF NEW JERSEY; NATIONAL ASSOCIATION OF BUNCO INVESTIGATORS; JOHN DOE, John Doe Being a Fictitious Name Representing One or More Persons, | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of three Motions to Dismiss filed by Defendants Police Department of the City of Linden ("LPD"), Police Department of the Township of Cherry Hill ("CHPD") and Police Department of the City of Elizabeth ("EPD") pursuant to Federal Rule of Civil Procedure 12(b)(6) for Plaintiffs' failure to state a claim upon which relief can be granted [Docket Entry Nos. 6, 7, 9]. The Court has considered Defendants' submissions and Plaintiffs' opposition thereto, and rules on the motion on the papers. Fed. R. Civ. P. 78. For reasons set forth below, the Court **GRANTS** Defendants' Motions to Dismiss Counts II, IV, V, VI and VII with prejudice against Defendants CHPD and EPD. Counts I and

III of Plaintiffs' Complaint are dismissed without prejudice against Defendant LPD, and those Counts are **stayed** pending resolution of criminal proceedings against Plaintiffs Clark Demetro and Frankie Quick.  Claims against individual John Does of the CHPD, LDP and EPD yet to be named by Plaintiffs are preserved to the extent Plaintiffs name said Defendants and adequately plead facts against them within the relevant statute of limitations period.

## I. BACKGROUND

Plaintiffs' Complaint alleges the following relevant facts, all of which are accepted as true for the purposes of the instant motion.  Plaintiffs Clark Demetro, Frankie Quick, Eddie Demetro and Josh Demetro are citizens of New Jersey and are of Roma ethnicity.  (Compl., Sec. C, ¶ 1).[1]  Their Complaint alleges a series of discriminatory acts by Defendant Police Departments, the National Association of Bunco Investigators ("NABI") and John Doe individual members of the Defendant Police Departments and NABI currently unknown to Plaintiffs.  Plaintiffs allege that, from at least June 24, 1997 until the present, these acts resulted in racial profiling, selective enforcement and false arrests based on their classification as Roma which violated their First and Fourteenth Amendment rights and are actionable pursuant to Title 42 U.S.C. §§ 1981, 1983, and 1985. While Plaintiffs assert a conspiracy claim, alleging ongoing acts in a pattern of discrimination, this Court will detail the discrete acts as stated in the Complaint made against each named Defendant in the order that they occurred.

---

[1] While the Third Circuit Court of Appeals has recognized the Roma as a distinct ethnic group in its review of removal decisions by the Board of Immigration Appeals, there is no case law classifying the Roma people either as a "protected class" based on race, alienage or national origin or as a "discrete and insular minority" in accordance with Carolene Products. United States v. Carolene Prods. Co., 304 U.S. 144, 152 n. 4; see Marinescu v. AG of the United States, 284 Fed. Appx. 889 (3d Cir. 2008).  However, litigation targeting alleged discrimination against the Roma has proliferated outside the United States, and in non-binding fora such as the European Court of Human Rights, Romani children have successfully brought claims against school segregation in the Czech Republic found to violate prohibitions on racial discrimination in the European Convention on Human Rights. See D.H. and Others v. Czech Republic, 57325/00, Council of Europe: European Court of Human Rights, 7 February 2006, *available at*: http://www.unhcr.org/refworld/docid/469e020e2.html.

On or about June 24, 1997, Defendant Cherry Hill Police Department published a "Police Information Only" Bulletin alerting of "possible 'GYPSIE' activity occurring in the Cherry Hill area." (Compl., Count II, ¶ 2; Ex. A). The Bulletin specifically identified Plaintiff Clark Demetro as a perpetrator of fraud and stated that one source "has indicated that he carries a handgun." (Id.). On or about October 27, 2006, the CHPD published and/or re-distributed an Intelligence Bulletin from Orange County, Florida's Sheriff's Office, warning that "Gypsies" are in the area and stating that "[t]hese groups typically engage in criminal activity . . ." (Id., Count II, ¶ 4; Ex. B). Plaintiffs contend that, subsequent to these publications, the CHPD "has and continues to maintain, publish and/or distribute Police Bulletins regarding possible 'Gypsie' activity," and "has and continues to target and single out, selectively detain, and/or prosecute individuals suspected of being a Roma (Gypsy)." (Id., ¶¶ 3, 5). Plaintiffs' additional complaints against the CHPD include harassment, investigations of Roma and subjecting them to ethnic slurs, differential treatment, application of excessive force, and abuse of power. (Id., ¶¶ 7-12).

On or about September 25, 2010, Plaintiff Frankie Quick was engaged in a "heated discussion" with his neighbor outside of Quick's home and was asked by an officer of Defendant Linden Police Department to leave the area. (Id., Count III, ¶¶ 1-2). When Plaintiff Quick told the officer that he lived there and tried to go into his home, he was arrested for disorderly conduct pursuant to N.J.S.A. 2C:33-2A(1). (Id., ¶¶ 3-4). The criminal complaint was transferred to the Elizabeth City Municipal Court due to a judicial recusal in the Linden Municipal Court, and the case is currently pending in the Elizabeth City Municipal Court. (Id., ¶¶ 6-7). Plaintiffs contend that, prior to, during and following Plaintiff Quick's arrest, he was subjected to ethnic slurs, name calling and multiple acts of discrimination and prejudice related to Defendants' belief that he is a "Gypsy." (Id., ¶ 8). Plaintiffs also claim that Plaintiff Quick was arrested

based on his racial or ethnic background, that Defendants inappropriately investigated him as part of a crime prevention policy specifically selecting out Roma for investigation, harassment, and differential treatment.  (Id., ¶¶ 9-12).

In or about October 2010, Plaintiffs Josh Demetro and Eddie Demetro were standing outside a 7-11 convenience store in Elizabeth, New Jersey drinking sodas that they had just purchased when Defendant City of Elizabeth Policy Department sent four police officers and/or detectives to the scene.  (Id., Count IV, ¶¶ 1-2).  Video recorded statements from witnesses say that the detectives were harassing the Plaintiffs, calling them names, using the word "Gypsy" and using unnecessary and excessive force.  (Id., ¶ 2).  Defendant detectives also told 7-11 store clerks that Plaintiffs should not be allowed to enter the store, eat at a restaurant or be anywhere in Elizabeth because they are "Gypsy."  (Id., ¶ 3).  Plaintiffs Josh and Eddie Demetro were then arrested and charged with solicitation, and after their criminal cases were set for hearings nine times with the Elizabeth City Police Officer not appearing at the Elizabeth Municipal Court, the criminal complaints against the Plaintiffs were dismissed on motion by counsel for lack of prosecution on June 15, 2011.  (Id., ¶¶ 4-10).  Plaintiffs claim that their discovery requests were ignored, that they never received copies of their criminal complaints, and that records of their arrests were never produced.  (Id., ¶¶ 7-9).  Plaintiffs also contend that they were arrested based on their racial or ethnic background, that Defendants inappropriately investigated them as part of a crime prevention policy aimed at arbitrarily intercepting, detaining and arresting Roma people, and that they were the subjects of harassment, differential treatment and abuse of police power. (Id., ¶¶ 12-15).

Finally, on or about June 2, 2011, Plaintiff Clark Demetro was accused and arrested by Defendant City of Linden Police Department for placing a false 911 call and for simple assault.

(Id., Count I, ¶ 1).  Plaintiffs claim that Clark Demetro's arrest was the result of racial prejudice, that the police did not perform due diligence in investigating the source of the 911 call, and that prior to, during, and following his arrest, Plaintiff was subjected to ethnic slurs, name calling and multiple acts of discrimination and prejudice related to Defendants' belief that Plaintiff is a "Gypsy."  (Id., ¶¶ 3-5).  As with the other counts in Plaintiffs' Complaint, Plaintiffs allege that Plaintiff Clark Demetro's arrest was based on his racial or ethnic background, that it was part of a crime prevention policy targeting Roma and subjecting them to harassment, differential treatment and abuse of police power.  (Id., ¶¶ 5-8).

Based on the above-cited facts, Plaintiffs commenced the instant action on July 28, 2011, alleging various claims pursuant to 42 U.S.C. §§ 1981, 1983 and 1985 against the Defendants and individual members of the Defendant Police Departments and municipal governments.[2] Along with the Defendants' individual violations, Plaintiffs allege that they "conspired for the purpose of depriving the Plaintiffs herein and the class of persons known as Roma and referred to as 'Gypsy,' of the equal protection of the laws, and/or equal privileges and immunities under the laws, and/or to injure the Plaintiffs in person or property on account of their race, religion or

---

[2] Incorporated into Plaintiff's Complaint are allegations against Defendant National Association of Bunco Investigators ("NABI"), a private organization whose members are "exclusively law enforcement personnel or officials," and which "maintains, publishes and distributes photographs, private information, public information and police records of one or more of Plaintiffs herein for purposes motivated by racial and/or ethnic discrimination, bias and prejudice in violation of the Plaintiffs' civil rights."  (Id., Count V).  Specifically, Plaintiffs claim that NABI uses a website to single out Roma people as criminals and makes a pointed effort to identify, apprehend and prosecute "Gypsies" throughout the law enforcement community.  (Id.).  Plaintiffs also include as an exhibit to their Complaint an article from the Los Angeles Times by Hector Becerra entitled, "Gypsies: The Usual Suspects," which documents the reporter's experiences at the NABI 21st Annual Conference in Valley Forge, Pennsylvania around January 30, 2006 where the reporter describes how "Gypsy crime detectives engage in profiling" by studying "gypsies" and sharing collected information.  (Id.; Ex. C).  However, there is no indication on the Court's docket that service of process on NABI has been properly effectuated, and NABI has not filed a responsive pleading or joined in the motions to dismiss currently pending before the Court.  To the extent that Plaintiffs choose to file an Amended Complaint to cure pleading deficiencies cited herein and choose to assert any claims against NABI, Plaintiffs shall comply with Federal Rule of Civil Procedure 4(m), which provides that: "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).

ethnic background." (Id., Count VII, ¶¶ 1-2).  For all of the above-cited acts, omissions and violations, Plaintiffs request injunctive relief, monetary, compensatory and exemplary damages as well as an award of costs and expenses pursuant to 42 U.S.C. § 1988.

## II.  LEGAL STANDARD

In reviewing motions to dismiss, a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff.  Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008); see also Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1995, 1965 (2007).  "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss."  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).   A complaint survives a Rule 12(b)(6) motion to dismiss if it states a claim to relief that is "plausible on its face" regarding plaintiff's entitlement to the relief sought.  Twombly, 127 S.Ct. at 1965-66.  A complaint may be dismissed for failure to state a claim upon which relief can be granted if the court finds "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

The burden of proof for showing that no claim has been stated is on the moving party. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)(citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).  During a Court's threshold review, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  In re Rockefeller Ctr. Props., Inc., 311 F.3d 198, 215 (3d Cir. 2002).  In general, the Federal Rules of Civil Procedure should be construed liberally so as to encourage ruling on the merits instead of technicalities: "This liberality is expressed throughout the Federal

Rules of Civil Procedure and is enshrined in a long and distinguished history . . . . An inadvertant mistake in pleading will not be held against the pleader if another party has not been misled by the mistake or otherwise prejudiced." Lundy v. Adamar of New Jersey, 34 F.3d 1173, 1186 (3d Cir. 1994). Further, courts will not dismiss for failure to state a claim merely because the complaint miscategorizes legal theories or does not point to an appropriate statute or law to raise a claim for relief. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 909 n.10 (1990); Common Cause v. Pennsylvania, 558 F.3d 249 (3d Cir. 2009). With this framework in mind, the Court turns now to Defendants' motions.

## III. DISCUSSION

### A. Claims Against Defendant Township of Cherry Hill Police Department

Plaintiffs assert claims against the Township of Cherry Hill Police Department and unknown individual John Does as individual members thereof in Counts II and VII of their Complaint, the latter of which is addressed *supra* as Plaintiffs' conspiracy claim against all named Defendants.

#### 1. Count II of Plaintiffs' Complaint

As stated *infra*, Plaintiffs allege that the Township of Cherry Hill Police Department and individual members thereof published and/or redistributed two Information Bulletins on June 24, 1997 and October 27, 2006. Further, Plaintiffs claim that these publications or distributions are part of a continuing policy or custom to harass and persecute Roma people, and that the Department continues to maintain, publish and/or distribute Police Bulletins regarding possible "Gypsie" activity in violation of their constitutional rights. The Court finds two fundamental deficiencies in Plaintiffs' Complaint regarding Defendant CHPD and individual members

thereof: 1) Plaintiffs fails to allege sufficient facts demonstrating Defendant CHPD's municipal liability through a policy or custom that Defendant instituted which resulted in constitutional injuries to Plaintiffs; and 2) in the alternative, Plaintiffs fail to allege sufficient facts to toll the applicable two-year statute of limitations on their §§ 1981 and 1983 claims against Defendant CHPD and individual members thereof to be named by Plaintiffs.

    a.  Municipal Liability of the Township of Cherry Hill Police Department

    While Defendant Township of Cherry Hill Police Department does not challenge whether or not it could be held liable as a municipality under §§ 1981 and 1983 in its Motion to Dismiss, Plaintiffs must nevertheless establish plausible grounds for asserting Defendant CHPD's municipal liability based on a policy or custom instituted which resulted in Plaintiffs' constitutional injury.  In Monell v. Dept. of Social Servs., the Supreme Court held that a municipality or local government can be held liable as "persons" under § 1983,  but only if responsible for a policy or custom that inflicts constitutional injury, even if such custom has not received formal approval through the body's official decision-making channels.  436 U.S. 658, 690-91 (1978).  "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996)(citation omitted).  Customs are "practices of state officials so permanent and well settled as to virtually constitute law." Id. (citation omitted).  Beyond showing such a policy or custom that deprived Plaintiffs of a federally protected right, they must also: (1) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation; and (2) establish a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 389 (1989); Kranson v. Valley Crest Nursing Home, 755 F.2d

46, 51 (3d Cir. 1985). A plaintiff bears the burden of showing that "a policymaker is responsible either for the policy or, through acquiescence, for the custom," and if "the policy or custom does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." Andrews v. Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)(citations omitted). A municipality and its police department are treated as a single entity for purposes of § 1983 liability. Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n. 4 (3d Cir. 1997). The municipal liability analysis under Monell for § 1983 claims also applies to claims brought under § 1981. See Jett v. Dallas Independent School District, 491 U.S. 701 (1989); Oaks v. City of Phila., 59 Fed. Appx. 502, 503 (3d Cir. 2003). The Court will apply Monell to Plaintiffs' claims against Defendant CHPD without first determining whether actual § 1983 or § 1981 claims could be sustained by Plaintiffs. See id. In applying the Monell analysis, the Court looks to see whether Defendant CHPD is responsible for a policy or custom that inflicted constitutional injury on Plaintiffs.

In Plaintiffs' Complaint and Opposition filing, they make generalized claims concerning Defendant CHPD's alleged discrimination against Roma, where Roma were:

> Subjected to racial slurs and epithets by the defendant police; that they were arrested, not due to criminal conduct, but based upon unsupported allegations that would not lead to the arrest of others similarly situated; that but for their belonging in this ethnic minority, they would not have been discriminated against, that the defendant city and its police department tacitly condones the discriminatory practices of its officers and detectives by failing to train, regulate or admonish their conduct, and thereby fosters the repetition thereof; and that the defendant police department conspired and continues to conspire with other police departments and with co-defendant NABI to deprive plaintiffs and other Roma of their civil rights.

(Pl. Opp'n Def. CHPD Mot. to Dismiss, at 4). However, Plaintiffs only cite to two Bulletin distributions allegedly made by Defendant CHPD to demonstrate the existence of a policy or

custom of racial profiling or selective enforcement against Roma. The first Bulletin, dated June 24, 1997, refers to "possible 'GYPSIE' activity occurring in the Cherry Hill area," but the entirety of the Bulletin subsequent to said reference exclusively details suspected criminal activity by Plaintiff Clark Demetro regarding his alleged fraudulent activity. The rest of the Bulletin neither explicitly names Mr. Demetro's alleged co-conspirators as "gypsies" or as Roma, nor does it articulate a broader policy or goal to target, interrogate, or arrest Roma for the purposes of responding to said alleged fraudulent activities by Mr. Demetro. While the Court is troubled by the Bulletin's sweeping reference to "'GYPSIE' activity," the Court cannot find sufficient ground in this single reference coupled with the extensive focus on one Roma individual's documented activities to plausibly infer a policy or custom of targeting Roma by the CHPD.

The second Bulletin, dated October 27, 2006, focuses more broadly on "Transient Criminal Groups," citing "Gypsies" as "transient criminal families and individuals," and alerting law enforcement to male- and female-specific criminal activity such as fraud against the elderly by males and female "shoplifting, travel trailer scams and merchandise return fraud [at local stores & malls.]" The Bulletin also lists "Interdiction Considerations" such as patrolling officers being "aware of work crews in residential neighborhoods," and advising that officers "NEVER GIVE A GYPSY . . . YOUR BUSINESS CARD! Unless they are victim's [sic] of a specific crime with their Orange County Case Number listed." Again, this Court is disturbed by Defendant CHPD's alleged distribution of a Bulletin which sweepingly refers to "Gypsies" as "transient criminal families and individuals." However, even if the Court construes the Bulletin's alerts as facially discriminatory, Plaintiffs fail to plead sufficient facts to show either that the Bulletin established or was a continuous part of a policy or custom of the CHPD

specifically with respect to any authorized program or practice of investigation or targeting, nor

do they sufficiently cite to facts that indicate that the Bulletin was applied and resulted in

constitutional injury against any of the four Plaintiffs not arrested by the CHPD, for example by

stating facts indicating that said Bulletin was distributed to the arresting Defendants LPD and

EPD. At best the Court can infer from facts alleged and taken to be true that Defendant CHPD

republished a warning by the Orange County Sheriff's Office in Florida to alert unnamed

individuals in law enforcement about individual activity by Roma and possible "interdiction

considerations."  However, those "considerations" listed in the republished Bulletin were not

clearly mandated by the CHPD as guidelines to the CHPD's own enforcement, but rather were

considerations offered as specific enforcement recommendations to police in Florida, stating, for

example, "[c]urrent intelligence shows a large number of traveler families are staying in the new

apartment complexes.  Also mobile home parks and resorts [Runaway Bay] in Kissimmee and

along the I-4 Corridor from Orlando to Tampa."  The Bulletin contained no modifications or

additions by the CHPD that indicate an adoption of any detailed prescriptions or

recommendations to policing in the Cherry Hill area with regard to Roma.  Thus, the Bulletin

certainly cannot constitute a "policy" as defined by Kneipp as there is no indication in the facts

alleged that a decision-maker possessing final authority in the CHPD issued the Bulletin as an

"official proclamation, policy, or edict" with respect to CHPD policing.  See Kneipp, 95 F.3d  at

1212.  Neither is the issuance of the Bulletin, even coupled with CHPD's alleged issuance of a

Bulletin nine years prior, enough to show that practices of the CHPD specifically regarding the

policing of Roma were "so permanent and well settled as to virtually constitute law."  Id.

Without citing to facts beyond Defendant's two Bulletin distributions, Plaintiffs' make

bald assertions regarding a discriminatory policy which does not allow the Court to draw

reasonable inferences that Defendant may be held liable under §§ 1981 and 1983. See Iqbal, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Therefore, Plaintiffs' §§ 1981 and 1983 claims against Defendant CHPD must be dismissed for Plaintiffs' failure to establish their burden regarding municipal liability. To the extent Plaintiffs can adequately plead claims against individual members of the CHPD, those claims are preserved as long as Plaintiffs cure the deficiencies in their Complaint regarding their timeliness.

b.  Statute of Limitations for Claims Arising Under 42 U.S.C. §§ 1981 and 1983

In its Motion to Dismiss, Defendant Township of Cherry Hill accepts as undisputed the facts alleged by Plaintiff regarding distribution of Intelligence Bulletins on the two dates cited, but argues that Plaintiffs are barred from asserting any claims arising from those distributions under the two-year statute of limitations period governing 42 U.S.C. §§ 1981 and 1983 claims. Plaintiffs make two arguments in response. First, they assert that Defendant continues to persecute and harass Roma people in an ongoing conspiracy to publish and disseminate material intended to track and aid in the arrest and imprisonment of Roma "because they are believed to be born criminals," and thus the two-year statute of limitations period should be tolled under the Continuing Violations Doctrine. (Pls. Opp'n to Def. CHPD Mot. Dismiss, at 8). Second, they conceive of their publication claims against the Township of Cherry Hill Police Department as continuous with their false arrest claims against the Linden and Elizabeth Police Departments, and argue that, under the discovery rule, the statute of limitations period should run from when Plaintiffs discovered or had reason to know of broader anti-Roma profiling:

> But for the past and continuing dissemination of 'Gypsy Activity' bulletins, tracking movements of Roma by police departments in most every city in New Jersey including the Defendant, Township of Cherry Hill, illegally detaining and/or arresting Roma men, women and children for the purpose of gathering their identifying information (photographs and fingerprints) and working in concert and conspiracy . . . to deprive plaintiffs and other Roma similarly situated of their civil rights, the plaintiffs herein would not have been persecuted, beaten, slandered and arrested as set forth in the Complaint.

(Id., at 7-8). Plaintiffs date their discovery or reason to believe they suffered an injury and from, at the earliest, the date of the first of Plaintiffs' false arrests, September 25, 2010. (Id., at 7).

Defendants may prevail on the statute of limitations at the motion to dismiss stage "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." See Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002)(citation omitted); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Cain v. Dep't of Pub. Welfare, 2011 U.S. App. LEXIS 17375 (3d Cir. Aug. 18, 2011), * 1-2 (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)). Actions brought pursuant to 42 U.S.C. §§ 1981 and 1983 are subject to the statute of limitations applicable to personal injury claims in the state in which the claim arises regardless of the facts upon which the claim is based or the nature of the injury sustained. Owens v. Okure, 488 U.S. 235, 249-50 (1989). A personal injury claim under New Jersey law must be brought within two years of the date of accrual. N.J. S.A. 2A:14-2. Therefore, the statute of limitations for § 1983 claims in New Jersey is two years. Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23 (3d Cir. 1989); O'Connor v. City of Newark, 440 F.3d 125, 126-27 (3d Cir. 2006); Evans v. Port Auth. Trans-Hudsonn , 2006 U.S. App. LEXIS 4349 (3d Cir. Feb. 23, 2006). Unless tolled, a § 1983 cause of action accrues under federal law when the allegedly wrongful act occurred. See Wallace v. Kato, 549 U.S. 384, 388 (2007). For

claims brought pursuant to the pre-1990 version of § 1981, the statute of limitations period is governed by New Jersey's two-year statute of limitations period for personal injury actions, but for claims brought under the post-1990 version of the Act, the four-year statute of limitations period set forth in 28 U.S.C. § 1658(a) applies. See Jones v. R. R. Donnelley & Sons, Co. 541 U.S. 369, 382-83 (2004); Ke v. Ass'n of Pa. State College and University Faculties, 2011 U.S. App. LEXIS 20730 (3d Cir. Oct. 12, 2011), * 4-5.

The only specific facts alleged in Plaintiffs' Complaint against Defendant CHPD were distributions of Intelligence Bulletins that occurred on June 24, 1997 and October 27, 2006. Unless the accrual of the cause of action can be delayed or tolled, Plaintiffs' causes of action under the two-year § 1983 and the two- or four-year § 1981 statute of limitations period are untimely.

### 1. Discovery Rule

Under New Jersey's discovery rule, the accrual of a cause of action will be delayed until such times as a plaintiff knows, or after the exercise of reasonable diligence should know, that he had been injured and that the injury was caused by the fault of another. Rolax v. Whitman, 53 Fed. Appx. 635 (3d Cir. 2002). The Third Circuit Court of Appeals has held that New Jersey's discovery rule tolls the statute of limitations in the context of selective enforcement until the victim discovers, or by exercise of reasonable diligence should have discovered, that the police action was improper. Dique v. N.J. State Police, 603 F.3d 181, 188 (3d Cir. 2010). It is Plaintiffs' burden "to explain why he reasonably could not have discovered his cause of action in time to comply with the limitation period so as to justify the tolling of the statute of limitations." Smart-El v. Corr. Med. Servs., Inc., 2008 U.S. Dist. LEXIS 44376 (D.N.J. June 5, 2008), *13.

Plaintiffs argue that it was only upon the false arrests that occurred on September 25, 2010, October 2010 and June 2, 2011 that the damage suffered by them accrued, as it was only then that they had reason to believe, or knew that they suffered injury and had an actionable claim. (Pls. Opp'n Br., at 7-8). Defendant CHPD counters that Plaintiffs failed to specifically state when and how they allegedly learned that they had suffered an actionable injury. Citing to Hawkins v. Feder, Defendant argues that this Court has found a § 1983 claim time-barred when plaintiff "d[id] not indicate what occurred in [the alleged accrual month] that led him to discover Defendants' alleged discrimination" nor did he "explain why he reasonably could not have discovered his cause of action in time to comply with the limitation period," instead only baldly stating "that he had no reason until [the alleged accrual month] to suspect that Defendants had discriminated against him." 2008 U.S. Dist. LEXIS 61067 (D.N.J. Aug. 5, 2008), * 3. Similarly, Defendant argues, "Plaintiffs have failed to set forth in their Complaint or Opposition to Defendant's Motion to Dismiss when they discovered the 1997 Police Bulletin bearing Plaintiff Clark Demetro's name or any of the other Bulletins allegedly disseminated by Defendant Township of Cherry Hill." (Def. Repl. Br., at 5-6). Therefore, it contends, Count II of Plaintiffs' Complaint should be dismissed.

The Court agrees that, even accepting all facts alleged in Plaintiffs' Complaint as true, Plaintiffs have failed to state a plausible date on which they learned either of CHPD's distributions or of their contribution, if any, to the false arrests Plaintiffs claim. Neither do Plaintiffs meet their burden in demonstrating that due diligence could not have led to earlier discovery of the Bulletin dissemination or Defendant's contribution to a broader discriminatory policy. Plaintiffs state that their "cases are problematic because there is no opportunity for discovery in plaintiff's [sic] possession." (Pl. Opp'n Br., at 6). However, Plaintiffs fail to

clearly state either that a single arrest or their separate and individual arrests made them aware specifically of the CHPD's two separate Bulletin distributions in 1997 and 2006. Plaintiffs also fail to identify how that discovery or reason to know of the distributions was linked to an injury actionable against Defendant CHPD, by, for example, stating that Defendant CHPD distributed those Bulletins to the LPD and the EPD at a time reasonably close to a Plaintiff or the Plaintiffs' arrests such that the Court may plausibly infer that Plaintiffs were made aware of an actionable injury against Defendant CHPD.[3] Aside from Plaintiffs' failure to cite facts specifically regarding the nature of their discovery of injury and a cause of action against Defendant, "a plaintiff is required to use 'diligence and reasonable investigative effort' to pursue his claim." Rolax, 53 Fed. Appx. at 638; Swietlowich v. County of Bucks, 610 F.2d 1157, 1162 (3d Cir. 1979); Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 426-27 (1987). That effort has not been demonstrated here regarding this exception to the tolling of the relevant statute of limitations period or periods.

### 2. Continuing Violations Doctrine

While continuing violation doctrine has most commonly been invoked in employment discrimination suits, this has not precluded its application to other causes of action, including § 1983 claims to vindicate violations of constitutional rights. Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001). The Third Circuit has stated that, for a plaintiff to benefit from the doctrine, he must establish "that the defendant's conduct is 'more than the occurrence of isolated or sporadic acts.'" Foster v. Morris, 208 Fed. Appx. 174 (3d Cir. 2006) (citing Cowell, 263 F.3d at 292); see also Roa v. LAFE, 200 N.J. 555 (2010)("What the doctrine does not permit is the aggregation of discrete discriminatory acts for the purpose of reviving an untimely act of

---

[3] The Third Circuit has even stated in Dique that a claim can accrue under the discovery rule when a plaintiff's attorney becomes aware of extensive documents describing the State's pervasive selective-enforcement practices. Dique, 603 F.3d at 188.

discrimination that the victim knew or should have known was actionable."). In its inquiry on the application of the doctrine to a particular case, courts should consider three factors: "(1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. The consideration of 'degree of permanence' is the most important factor." Id.

Defendant CHPD claims that the continuing violation doctrine should not apply here because the facts alleged against them are "only discrete incidents" and rely on a conclusory statement by Plaintiffs that Defendant "has and continues" to falsely detain and arrest individuals of Roma ethnicity. (Def. CHPD Mot. to Dismiss, at 7). Specifically, Defendant cites to this Court's ruling in Major Tours v. Colorel, where the Court found that, "[e]ven if the doctrine applies to § 1983 actions, it does not apply to a racial profiling claim involving many discrete acts of racial profiling and selective enforcement. Unlike a hostile work environment in which not every inappropriate comment or glance is actionable in itself, racial profiling involves a series of discrete actionable incidents. A claim based on racial profiling or selective enforcement accrues at the time of the discriminatory enforcement action." 2011 U.S. Dist. LEXIS 61189 (D.N.J. June 7, 2011), at *18. In Major Tours, this Court went on to say that:

> It would undermine the grave import of such racial discrimination to hold that, as required for the continuing violation doctrine to apply, no single stop was actionable. Racially selective enforcement is analogous to an employee being repeatedly turned down for promotion on the basis of race. The employee may not discover the discriminatory reason for the failure to promote until the pattern emerges, in which case the employee's recourse is to equitable tolling based on the discovery rule, but that does not aggregate the discrete actions into a continuing violation.

Id., at *19.  In response, Plaintiffs argue that the doctrine applies here "where the conduct complained of continues unabated which can be viewed as a pattern recognizable as illegal over time." (Pl. Opp'n Def. CHPD Mot. to Dismiss, at 8).  Specifically, Plaintiffs state that "[i]t was only fortuitous that plaintiff, Clark Demetro, discovered a bulletin bearing his name.  The defendant police departments routinely receive bigoted, biased and highly prejudicial 'Alerts' and other information regarding Roma people from defendant NABI and just as routinely send such information about Roma to NABI and other police departments.  However, such communications are done in secret from the general public." (Id., at 8-9).

This Court finds that Plaintiffs have not sufficiently pled the applicability of the continuing violations doctrine to Defendant CHPD's acts.  The fact that the two cited Bulletins were issued nine years apart without any additional acts cited to but general distributions kept secret from the public points to a determination that any wrongful conduct by Defendant was isolated or sporadic and were aggregated into arrests which occurred three to thirteen years following publication and/or distribution of the Bulletins.  While one Cowell factor weighs in favor of the doctrine's applicability—the subject matter of the violations constitutes the same type of discrimination against Roma—the limited frequency of the occurrences and the alleged degree of permanence do not.  Plaintiffs' own Complaint states an high degree of permanence that should have triggered Plaintiffs' awareness of and duty to assert their rights: "Roma have been discriminated against by individuals and governments since their appearance in Eastern Europe in the 14th century.  Early anti-Roma laws have been found in Germany as early as the 15th century.  The last remaining discriminatory legislation in New Jersey requiring 'Gypsies' to be licensed was repealed only in 1998." (Compl., Sec. C, ¶ 2).  If we continue to hold, as we do, that a racial profiling claim accrues at the time of the discriminatory enforcement action, and the

discriminatory enforcement action were the cited distributions, Plaintiffs cannot, without further facts pled, toll the statute of limitations period barring their claims.

Therefore, the Court will dismiss Plaintiffs' claims as stated in Count II of their Complaint against Defendant CHPD with prejudice for failure to state a claim grounded in their municipal liability. In the alternative, the Count II claims against Defendant CHPD and individual members thereof are dismissed as time barred. To the extent that Plaintiffs amend their pleadings to name individual John Does and overcome the above-cited deficiencies in the facts pled regarding the tolling of the statute of limitations, the Court will consider the timeliness of Plaintiffs' claims against those individual members of CHPD yet to be named.

### B. Claims Against Linden Police Department

Plaintiffs assert claims against Defendant City of Linden Police Department and unknown individual John Does as individual members thereof in Counts I and III of their Complaint. Plaintiffs also allege a conspiracy claim against Defendant pursuant to § 1985, addressed *supra* in Section E.

1. Count I and III

As stated *infra*, Plaintiffs allege that the LDP and individual members thereof falsely arrested Frankie Quick on or about September 25, 2010 near his home for disorderly conduct when he failed to leave the area. Plaintiffs also allege that Defendant and individual members thereof falsely arrested Clark Demetro on or about June 2, 2011 for placing a false 911 call and for simple assault.[4] Plaintiffs claim that the arrests were based on Plaintiffs' ethnic or racial

---

[4] In its opposition, Defendant LDP submitted an LDP Incident Report, Domestic Violence Statement, and Criminal Complaints regarding Plaintiff Clark Demetro's June 2, 2011 arrest; LDP Incident Report regarding Plaintiff Frankie Quick's September 25, 2010 arrest; New Jersey Attorney General Guidelines on Police Response Procedures in Domestic Violence Cases; and LDP Policy & Procedures regarding Domestic Violence. Pursuant to

background and were the result of inappropriate investigations as part of a crime prevention policy directed at the arbitrary interception, detention and arrest of Roma in violation of their constitutional rights. The Court finds that Plaintiffs have failed to allege sufficient facts demonstrating Defendant LPD's municipal liability through a policy or custom resulting in constitutional injuries to Plaintiffs. To the extent that Plaintiffs can pursue claims against individual members of the LPD yet to be named, pursuance of those claims will be stayed pending resolution of the criminal proceedings in the Elizabeth Municipal Court against them.

### a.  Municipal Liability of the City of Linden Police Department

Defendant City of Linden Policy Department argues that Plaintiffs have failed to set forth facts in their Complaint demonstrating that the LPD deprived Plaintiffs of a federally protected right through a policy or custom. (Def. LPD Mot. to Dismiss, at 13). Specifically, Defendant states that the Complaint does not plead enough facts either showing that they were deprived of a constitutional right nor that a policy or custom of the LPD was the "moving force" behind any

---

Federal Rule of Civil Procedure 12(d), if a court considers material submitted outside the pleadings on a Rule 12(b)(6) motion to dismiss, the court must treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). A court may exclude such outside matters and treat the Rule 12 motions as labeled. Pryor v. NCAA, 288 F.3d 548, 559 (3d Cir. 2002). Accordingly, the court declines to consider evidence submitted by Defendant LDP and treats the motions as labeled, under Rule 12(b)(6). Defendant cites to three Third Circuit cases in support of the court's consideration of the submissions attached to their motion to dismiss: Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993); In re Burlington Coat Factory Sec. Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997); Lum v. Bank of America, 361 F.3d 217, 222 n. 3 (3d Cir. 2004). In Pension Benefit, the Third Circuit held that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." 998 F.2d at 1196. However, that case was based on a contract dispute based on the terms of the contract, the breach of which resulted in the claims arising in the plaintiff's complaint. The instant action is not a contract dispute, and Plaintiff's alleged false arrest claim does not depend on authentic documents central to resolving his claim. In Burlington Coat Factory, the Third Circuit stated the accepted exception to the general rule that a court may not consider matters extraneous to the pleadings. That exception is when a "'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion into one for summary judgment.'" 114 F.3d at 1426. However, in this case, Plaintiffs' Complaint is not based on the documents submitted by Defendant, but are rather "based" on his experience of alleged misconduct by Defendant resulting in constitutional violations. Finally, in Lum, credit agreements integral to and relied upon in plaintiffs' complaint were considered as exhibits to defendant's motion to dismiss without converting the 12(b)(6) motion into a summary judgment motion. 361 F.3d at 422 n. 3. Again, the credit agreement in that case was dispositive in determining the rights and obligations of the parties at issue, whereas here, the Incident Report, Police Guidelines and Policy and Procedure documents only provide evidentiary support for alternative facts not cited or relied upon in the Complaint.

purported violation of Plaintiffs' constitutional rights.  Plaintiffs' respond by stating that

Defendant LDP violated their federal right to be free from false arrest and harassment from a

public official, and that "the defendant consistently permits and fosters a pattern of abuse of

process and violation of civil rights of Roma in general and plaintiffs in particular within the city

limits of Linden."  (Pl. Opp'n Def. LPD Mot. to Dismiss, at 9).

    While the Court will not assess the legal merits of Plaintiffs' claims §§ 1981 and 1983

claims in reviewing Defendant's Motion to Dismiss, it is clear that Plaintiffs do allege facts

which implicate federally protected rights granted under the 4th Amendment.  However, the

Court agrees that Plaintiffs have failed to sufficiently plead facts demonstrating a policy or

custom within the LPD that existed, that the LPD acted as a moving force in the deprivation of

said rights by Plaintiffs, and that there is a causal link between any policy or custom and the

alleged deprivation.  With respect to Plaintiff Quick's arrest for disorderly conduct, Count III

states only that the arrest occurred in front of Plaintiff Quick's home after Plaintiff's "heated

discussion with a neighbor," and the Count also includes identical language as that included in

Counts I through IV of the Complaint, which is that "[p]rior to, during and following his arrest

Plaintiff was subjected to ethnic slurs, name calling and multiple acts of discrimination and

prejudice related to the defendants' belief that plaintiff is a 'Gypsy.'"  (Compl., Count III, ¶ 8).

Even assuming the facts alleged surrounding Plaintiff Quick's arrest are true, the statement in the

Complaint regarding persistent discrimination is too conclusory and lacks the characteristics of

permanent and well-settled conduct so as to establish a custom sufficient for municipal liability

to attach under Monell.  Such general facts, even if true, are entirely consistent with individual

officers of the LPD using derogatory language and directing discriminatory acts against Plaintiff

Quick entirely in the absence of municipal custom.  Plaintiff Demetro's arrest is even less

indicative of an established custom of selective enforcement or racial profiling against Roma as it occurred in the context of an alleged incident of domestic violence for which the LPD were called to the scene and arrested Plaintiff Demetro for assault, an act which on its face does not create a plausible inference of selective enforcement precisely because New Jersey law mandates arrest of all perpetrators under such circumstances. See N.J.S.A. 2C:25-21. Nevertheless, the two arrests combined, coupled with facts alleged that police officers on both occasions used ethnic slurs, name calling and multiple acts of discrimination and prejudice may rise to the level of an articulable custom should those "multiple acts of discrimination and prejudice" stated in the Complaint be stated with specificity. Therefore, while the Court will dismiss Counts I and III of Plaintiffs' Complaint, it will do so without prejudice so as to allow Plaintiffs to amend deficiencies stated herein regarding Defendant LPD's municipal liability. Any such amendments, however, will only be considered once this Court lifts its stay following resolution of criminal proceedings against Plaintiffs Quick and Demetro.

      b. *Younger* Abstention

      Both Plaintiffs Clark Demetro and Frankie Quick's criminal complaints are currently pending in the Elizabeth City Municipal Court. (Compl., ¶¶ 6-7; Def. LDP Mot. to Dismiss, at 17). Federal courts do not generally interfere in pending state judicial proceedings, abstaining from such interference as long as the constitutional issues involved may be addressed adequately in the state criminal proceedings. Younger v. Harris, 401 U.S. 37 (1971). The Third Circuit Court of Appeals has stated three requirements that must be met for Younger abstention to be invoked: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. Of

New York and New Jersey Police Dept., 973 F.2d 169, 173 (3d Cir. 1992). In this matter, all three requirements for abstention are met since there is a criminal proceeding implicating important state interests, and there is no reason to believe that the proceeding does not afford an adequate opportunity for Plaintiff to raise his claims. Therefore, the Court will abstain from interfering with the ongoing state criminal proceeding and stay civil proceedings on any §§ 1981 and 1983 claims brought by Plaintiffs Clark Demetro and Frankie Quick pending resolution of the criminal matter against them. See Bailey v. Ness, 733 F.2d 279, 283 (3d Cir. 1984) ("the better course in situations where the district court feels compelled to abstain is to stay, rather than dismiss, the § 1983 action so that the plaintiff is protected fro ma possible statute of limitations bar to the § 1983 suit"); Linnen v. Armainis, 991 F.2d 1102 (3d Cir. 1993). Plaintiffs may provide updates on the status and outcome of the criminal prosecutions against them every sixty (60) days.

## C.  Claims Against City of Elizabeth Police Department

Plaintiffs assert claims against the City of Elizabeth Police Department and unknown individual John Does as individual members thereof in Count IV of their Complaint. Plaintiffs also include Defendant EDP in their conspiracy claim against all Defendants pursuant to § 1985, addressed *supra* in Section E.

1.  Count IV

As stated *infra*, Plaintiffs allege that the EDP and individual members thereof falsely arrested Josh and Eddie Demetro for solicitation in October 2010. Plaintiffs claim that these arrests are part of a continuing policy or custom to harass and persecute Roma people, and that the Department continues to engage in discriminatory targeting and abuse of power in relation to

Roma people in violation of their constitutional rights.  Since the Court finds Plaintiffs'

Complaint against Defendant EDP deficient in its failure to allege sufficient facts demonstrating

Defendant's municipal liability, Count IV of Plaintiffs' Complaint is dismissed with prejudice.

Plaintiffs claims are preserved against individual members of the EDP still to be named.

    a.  Municipal Liability of the City of Elizabeth Police Department

    Defendant argues that Plaintiffs' Complaint must be dismissed since it cannot hold the

municipality vicariously liable for acts of individual police officers.  (Def.EDP Mot. to Dismiss,

at 3).  Specifically, Defendant alleges, Plaintiffs fail to show, as required under Monell, that

Defendant implemented or executed a policy statement, ordinance, regulation or custom, beyond

their alleged employment of a tortfeasor, which would implicate them in constitutional wrongs

against Plaintiffs.  (Id., at 4).  Plaintiffs argue in response that all of the Defendants "conspired

with each other in the acts and omissions that form the factual basis of the Complaint, " and that,

on the contrary, "Plaintiffs' in their complaint set forth with clarity, and specificity, the

discrimination, false arrests, physical abuse, racial profiling and racial slurs and racial bias

perpetrated by the defendant in this case; all don in bad faith and with malice."  (Pl. Opp'n to

EDP Mot. to Dismiss, at 6).

    As with Plaintiffs' factual allegations against Defendant CHPD, Plaintiffs' allegations

against Defendant here are generalized and lack a sufficient recitation of facts to support a

reasonable inference of a broader discriminatory policy.  Engaging in two arrests on one night

for solicitation, making racial slurs, and even notifying 7-11 staff not to allow patronage by

Roma at most indicate discriminatory acts by individual officers, not a more extensive custom to

target Roma by the entire police force of the City of Elizabeth.  They also cite to no facts beyond

generalized statements of conspiracy which link the EDP with the other named Defendants so as

to create an inference of a city-wide or law enforcement-wide custom of discriminating against Roma. Thus, the Court finds that Plaintiffs larger allegations in the Complaint concerning municipal liability are conclusory and are limited to bald assertions insufficient to overcome a motion to dismiss. Plaintiffs' §§ 1981 and 1983 claims against the EDP are dismissed with prejudice, but Plaintiffs may amend their Complaint to cure deficiencies addressed herein supporting Defendant's municipal liability.

### D. Punitive Damages Claim for §§ 1981 and 1983 Claims (Count VI)

Punitive damages are available for § 1983 claims "not only where there is a malicious intent or evil motive, but also where the defendants acted with 'a reckless or callous disregard of, or indifference to, the rights and safety of others.'" Bennis v. Gable, 823 F.2d 723, 734 (3d Cir. 1987). A municipality is immune from punitive damages under 42 U.S.C. § 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981). The Court will abstain from considering Plaintiffs' entitlement to recovery of exemplary damages if and when their §§ 1981 and 1983 claims are sufficiently pled and individual members of Defendant Police Departments are named. For the purposes of allowing amendment, however, the Court notes that Plaintiffs may only recover punitive damages from proper defendants under Newport.

### E. Conspiracy Claims (Count VII)

Plaintiffs assert a conspiracy claim against all named Defendant Police Departments and unknown John Does as individual members thereof in Count VII of their Complaint. Specifically, Plaintiffs claim that the "named Defendants and the individual members of the defendant police departments, municipal governments and private organizations conspired for

the purpose of depriving the Plaintiffs herein and the class of persons known as Roam and referred to as 'Gypsy,' of the equal protection of the laws, and/or of equal privileges and immunities under the laws, and/or to injure the Plaintiffs in person or property on account of their race, religion or ethnic background." (Compl., Count VII, ¶ 2). Plaintiffs do not specify whether they intend to bring conspiracy claims under 42 U.S.C. § 1985(3) or under 42 U.S.C. § 1983, so the Court will address both.

### 1. 42 U.S.C. § 1985(3) Claim

To state a § 1985(3) conspiracy claim, a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006)(citations omitted); see 42 U.S.C. § 1985(3). To survive a Rule 12(b)(6) motion to dismiss, allegations of conspiracy must provide "some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 184 (3d Cir. 2009). Further, a plaintiff must allege both "that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." Faber, 440 F.3d at 134.

Defendant CHPD make two arguments with respect to dismissing Plaintiffs' § 1985 claim against them: 1) it is barred by the two-year statute of limitations under N.J. S.A. 2A:14-2; and 2) since Plaintiffs' only provide facts alleging independent conduct by the Co-Defendants, the fail to offer sufficient facts to evidence any agreement or understanding between the Defendants to deprive Plaintiffs of their constitutional rights. Specifically, they contend,

"Plaintiffs present no facts that allegedly connect Defendant Township of Cherry Hill to arrests effectuated by Co-Defendants City of Linden and/or City of Elizabeth, to demonstrate a concerted, ongoing plan by the Defendants." (Def. CHPD Mot. to Dismiss, at 11). Defendant LPD asserts the same basis for dismissal, claiming that Plaintiffs have provided only a "kitchen sink" method of pleading, vaguely joining Linden, Cherry Hill, Elizabeth and NABI "in some grand conspiracy to deprive Plaintiffs of constitutional rights which germinate purportedly when Clark Demetro is arrested for domestic violence and Frankie Quick for a disorderly person's offense by Linden." (Def. LDP Mot. to Dismiss, at 18-19). Since Plaintiffs' "blind and threadbare allegations" show no "modicum of connection between" the named Defendants, their § 1985 claim "fails to meet the minimal pleading requirements." (Id., at 19-20). Defendant EDP does not address Plaintiffs' § 1985 claim in its Motion to Dismiss.

In response, Plaintiffs state that § 1985 "permits an action to be brought when the injured party is a 'victim' of conspirators," and that "to allege the defendant agencies did not act in tandem, concert and acquiesce and condone each other's actions, is to believe Lee Harvey Oswald acted alone." (Pl. Opp'n CHPD Mot. to Dismiss, at 10). Plaintiffs argue that overt acts are not required to prove serious conspiracies and cite to Lake v. Arnold, 112 F.3d 682 (3d Cir. 1997), for the proposition that the reach of § 1985 "is predicated on racial or perhaps other class based invidiously discriminatory animus." (Id.). Plaintiffs also cite to employment discrimination law which sets out the requirements of establishing a prima facie case of discrimination not relevant to the action here.

Plaintiffs' Complaint alleges the following facts in support of their conspiracy claim: (1) Defendant CHPD distributed two Bulletins in 1997 and 2007; (2) four of the Roma Plaintiffs were falsely arrested between October 2010 and June 2011 based on their racial or ethnic

background; (3) during said arrests, individual police officers used racial slurs derogatory to Plaintiffs' Roma race or ethnicity; (4) Defendants investigated Plaintiffs as part of a crime prevention policy intended to arbitrarily intercept, detain and/or arrest Plaintiffs; and (5) NABI, a Defendant not served in this action, collects and distributes materials targeting Roma within the law enforcement community. The object of the alleged conspiracy was purposeful discrimination without any legitimate state interest. (Compl., Sec. C, ¶ 5).

The allegations in Plaintiffs' Complaint do not, as a general matter, provide sufficient factual basis to support the existence of the elements of agreement and concerted action required for conspiracy. Plaintiffs fail to plead any facts that plausibly suggest a meeting of the minds between members of the Cherry Hill, Linden and Elizabeth Police Departments as required under Twombly to survive a motion to dismiss. 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). Plaintiffs also do not allege an approximate time when the agreement was made or the period through which the conspiracy extended. See Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989)("To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."), abrogated on other grounds by Beck v. Prupis, 529 U.S. 494 (2000). Plaintiffs do not allege facts indicating awareness of any mutual information collection or dissemination, or of ongoing investigations, arrests, and targeting intended to discriminate against Roma. Those facts which are alleged, without more, do not create "plausible grounds to infer an agreement," and Defendants' Motions to Dismiss this claim is therefore granted without prejudice.

2. § 1983 Conspiracy Claim

For a plaintiff to establish a proper § 1983 civil conspiracy claim, he or she must allege that "persons acting under color of state law conspired to deprive him of a federally protected right." Perano v. Twp. Of Tilden, 423 Fed. Appx. 234 (3d Cir. 2011). Just as with § 1985(3) claims, a conspiracy claim under § 1983 requires a "meeting of the minds," and to survive a motion to dismiss, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action. Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183, 205 (3d Cir. 2008)(quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970)); Capogrosso, 588 F.3d at 185. It is insufficient to allege that "the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." Novellino v. N.J. Dep't of Corr. Mountainview Youth, 2011 U.S. Dist. LEXIS 85209 (D.N.J. Aug. 3, 2011), * 15 (citing Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997)). For the reasons cited above with respect to Plaintiffs' § 1985(3) claims, the Court dismisses any asserted § 1983 conspiracy claim in Count VII because Plaintiffs have failed to adequately allege the elements of a conspiracy.


**IV.  CONCLUSION**

For the foregoing reasons, the Court **grants** Defendants' Motions to Dismiss Counts II, IV, V, VI and VII with prejudice against Defendants CHPD and EPD.  Counts I and III of Plaintiffs' Complaint are dismissed without prejudice against Defendant LPD, and those Counts are **stayed** pending resolution of criminal proceedings against Plaintiffs Clark Demetro and Frankie Quick.  Claims against individual John Does of the CHPD, LDP and EPD yet to be named by Plaintiffs are preserved to the extent Plaintiffs name said Defendants and adequately

plead facts against them within the relevant statute of limitations period. Plaintiffs are granted leave to amend their Complaint in a manner consistent with the strictures of this Opinion and accompanying Order.

DATED: November 22nd 2011

_____

Jose L. Linares
United States District Judge